court today. We have three argued matters before the court today, as well as three submitted matters. But before we get there, we have some important motions that I understand Judge Toronto wants to make before the court. I will move the admission of my four current law clerks to the bar of this court. Before I do that formally, I want to thank them and simultaneously express my admiration for a wonderful year of collaboration and advice and scholarship and occasional argument, but always productive. And I look forward to seeing them in this court and reading about their future careers, which are wonderfully promising. So I will move the admission of, I think I will do this collectively and want to stand. I move the admission of Grant Dixon, who is a member of the bar, and in good standing with the highest court of District of Columbia. Emma, you could stand one at a time so you get a moment alone. Emma Miller-Kleiner, who is a member of the bar and in good standing with the highest court of California. Madeline Laufeimer, a member of the bar and in good standing with the highest court of her beloved state of Massachusetts. And Ben Picosi, a member of the bar and in good standing with the highest court of California. Okay. Should we debate this? I don't think we need any debate. We will grant the motion and all of you will be admitted to and are welcome to the bar. Please raise your right hand. Do you solemnly swear or affirm that you will report yourself as an attorney and counsel to this court on the basis of the court's law and the support of the Constitution of the United States of America? I do.  Okay. So the first case before the court today is Santana v. U.S., docket number 162435. It is an appeal from a decision of the Merit System Protection Board. Mr. Wells, you want five minutes for rebuttal? Yes, Your Honor. Okay, you may proceed. Thank you, Your Honor. May I please the court? Actually, this is an appeal from the Court of Federal Claims. Your Honor, this is a military pay case. Despite all the efforts to paint it as something else, it is still a military pay case. And I would ask you to look at the complaint itself, which is probably the best testament at Appendix 197, 198, the prayer for relief. It's a military pay case. So you're not, in this case, challenging the denial of a request for a special selection board? No, Your Honor. The only reason we made a request for a special selection board, and it was a conditional request, was because the issue had come up. Until Crumley, which was decided by the court below in 2015, there was no indication and no real belief, I think, that 1558, the special selection board, even remotely attached to a military pay case. And that's our contention today, is that 1558 does not attach. It attaches to any kind of a board that is asking for a review of a promotion board or a selection board or a retention board. But our case today, and the case in the court below, accrued at the discharge, and that's the only time it can accrue under a Martinez, and it accrued the issue was improper discharge. Anything else? Retaliation? Any selection board? What made the discharge improper? What made the discharge improper was a number of things, and those are the incidental and collateral things that we were talking about, and that would have included the fact... Tell me if I'm wrong. I had understood from the complaint that there are two things you say are improper about the discharge. One, it rested on, in particular, a report that you claim was a reprisal for whistleblowing, and second, in a much more minor way, that it in some way was affected by the detachment from the Afghanistan assignment sending Commander Santana back to Florida. And you're exactly right, and those were the circumstances that led up to the improper discharge. So both that detachment order, or the government argues it wasn't really a detachment, but both that alleged detachment and the dismissal, you're saying that what makes them wrong is essentially a violation of the Whistleblower Protection Act, correct? Not the Whistleblower Protection Act, Your Honor, because there's no cause of action under that per se, but under the DOD policies that talk about the whistleblowers. But it goes really to more than just whistleblowing. If we allow you to bring these allegations of retaliation in the form of a military pay act, then why would anyone ever go through the special procedures for the Military Whistleblower Protection Act? Well, that's a good question, Your Honor, and frankly, I don't go through the special procedures for the Military Whistleblower Act because I have no faith in them. And we've had a number of cases that have brought up under the military pay in which there has been an underlying whistleblower. But it's more than just the whistleblower aspect of it, Your Honor, it was the fact that she was trying to perform her duties as an environmental health officer in Afghanistan facing the burn pits. And burn pits, since her detachment, have become very famous or infamous as far as causing veterans' disability or disability for the active duty service. It's been called the Agent Orange of the 21st century. It wasn't just her reprisal for trying to bring this to the attention of her boss's bosses, as it were, but also for the fact that she was trying to do her job. And in doing their job, that's why she was detached and sent back. I haven't claimed, I mean, she didn't quit and say she was constructively discharged because the circumstances of her employment were problematic, correct? No, ma'am, I didn't. And in fact, she didn't want to be detached. She did not want to be detached. She did not want to be discharged. She had 17 years and one month to go. What about that claim where you had originally said that there was supposed to be a presumptive continuation for anybody within six years of retirement, and you seem to have dropped that claim? No, ma'am, I didn't drop it. I'm sorry if you thought I did. There's nothing in that appeal brief about it. I guess I didn't mention it. I apologize for that. But again, that comes back to the boards itself, and we're not challenging the board. We're challenging the discharge. Anywhere along the line, not just with the board, the Secretary of the Navy, Chief of Naval Personnel, everybody could have said 17 years, one month of service, retain her on active duty. That could have happened. And had she done 11 more months of active duty, she would have been in what they call the safe zone or the sanctuary, where they actually could not have discharged her absent a court marshal or a board of inquiry. So it's the discharge itself that we are contesting. And in fact, that's the only thing we can contest, because under the Military Pay Act and under the Tucker Act, it's the loss of the pay and the allowances that are the cause here at Otherwise, we would have had to do an Administrative Procedures Act case, and we could have done that, and at that point in time, I think we would have had to do a 1558 board. But the 1558 designation in the statute, nowhere does it really apply to a Military Pay Act case. And one of the things, and I think you all saw the, again, I apologize for the lateness of it, about six weeks ago, the Navy came out and denied the 1558 board. You have, though, you know, we have to look at jurisdiction in the Court of Federal Claims as of the point in time that, at least as of the point in time that the judgment was entered in the Court of Federal Claims. And at that point, you had not sought the additional review. Is that right? At the time the judgment was entered, we had sought it. The six-month time period had not run. Okay. Okay. There was no denial either by law or in fact? No, no. It was still, they had six months to deny it. It took a year. So we need to address that in this case if you have another timely action? I think it goes only to the effect of did we exhaust our administrative remedies. But, Your Honors, I think Judge Toranzo, I hope I didn't cut you off there. No, no, no, no, you're talking about us. But the most important issue is does 1558 attach to a military pay case? If there was no board, if they had just, if it had been one of those cases where there was an administrative separation without a board, you know, certainly that wouldn't come under 1558. But it would certainly be within the gamut of a military pay case. So if you find, Your Honors, that 1558 attaches to a military pay case, that I think is going to be a major change in the law because nowhere before have any of these administrative remedies been attached to a military pay case. And so that sounds like you're saying there have been cases, and I guess the question will be what cases, please tell me what they are, in which a military pay act case was adjudicated challenging a discharge that occurred through this series of promotion, selection, continuation, special selection boards, and that process had not in fact run its course, and yet the Court of Federal Claims heard a challenge to the discharge seeking money that would have been paid had the discharge not occurred. Well, on that exact set of facts, Your Honor, I don't think there is one. Probably because 1558 is still new enough, it's still working its way through the courts. But I would take you back to Martinez. But the 628 version of it, not for the... 628 doesn't even come close, Your Honor. But those also would be discharges as a result of decisions not to promote and so on. Oh, I see what you're saying. A 628 case, I can't tell you of any decisions. As I looked under 628, I didn't find any. But this was not even, did not even meet the threshold requirements for 628. It was not, there's two requirements for 628. Either it has to be because of... Let me go back to my notes here. Not considered for promotion and should have been, or anybody considered by the board was considered in an unfair manner. We've never argued that because the board had the record before it. The board made their decision based on the record. We've never challenged that before. Can I ask this? What is it that you cannot do in your new lawsuit, the one that you filed in December of last year, just before the six-year statute of limitations ran after the denial of the Special Selection Board? What is it that you can't do, press in that case, that you're pressing here? Well, that's an excellent question, Your Honor. My concern... It seems to me you probably can at least press the detachment, that the detachment was procedurally improper and that in turn led to the chain that led to the discharge and that should have been taken care of by the secretary and then send it back for a Special Selection Board. The reprisal I'm not so sure about because it's not clear to me whether the exhaustion through the Special Selection process is the relevant exhaustion for the military whistleblower protection. And, Your Honor, my concern is that if we... I'm sorry, I'm in my rebuttal time, but my concern is that if you affirm the case, then now all of a sudden 1558 is going to apply to military pay acts, and I'm not sure that's the correct thing to do at this point. If you remand it, then what we would do is consolidate the two cases. Well, I guess what I was trying to figure out is as a practical matter, what difference would there be between remanding and just affirming this one, but the new one goes forward because this one isn't with prejudice to your proceeding once the exhaustion occurred. No, Your Honor, the only prejudice would be that there would certainly be an argument that you have affirmed 1558 attaches to a military pay case, and that's my concern. Couldn't we find the 1558 attaches here because what you have is a Whistleblower Protection Act case that's masquerading as a military pay act case, so 1558 would apply in that instance. It would, but, Your Honor, I think that would be not what we are actually... what we've come forth with because we're not trying to masquerade. The information on reprisal and so on and so forth were factual contexts. Well, those factual contexts, when I look at the complaint, you've got two counts, and they're both retaliatory in nature. I'm sorry, Your Honor, I... You have two counts in your complaint, and they're both retaliatory in nature. Yes, Your Honor, but our actual prayer for relief addresses only the denial of the military pay and allowances. And, Your Honors, I'm sorry, I am into my rebuttal time. I will save the rest of it for you. Thank you, Your Honor. May it please the Court. Lieutenant Commander Santana brought this action seeking military pay, but her substantive allegations of error all focus on an adverse fitness report, which she claims was a reprisal for alleged whistleblowing, and which in turn led to her non-selection for promotion and ultimately her discharge. How does the fitness report relate to the claim of procedural error in telling her to leave Afghanistan? Let's call that a detachment. Your Honor, the allegation is that the fitness report itself, which was prepared on occasion of Lieutenant Commander Santana's detachment from Afghanistan, that that routine detachment report was a constructive detachment for cause. And we've argued in the briefs and laid it out that there's no such thing as a constructive detachment for cause. That is an actual adjudication by the military personnel branch that someone needs to be detached for cause. The words detachment for cause do not appear on the fitness report. But she was clearly sent home early. No question about it. And there are military regulations that detail the process for whenever someone is detached from their current unit and are sent home to their base unit. Those are the routine detachment regulations that were followed. I mean, it seems a little circular. He's saying that she was effectively detached because she was sent home early because they felt she wasn't playing well in the sandbox. No pun intended with Afghanistan over there. I'm sure there's a lot of sand. But that she was not fitting in well with her colleagues over there, so she gets sent home. She said that's a detachment. And you said it can't be a detachment because we didn't follow all the rules relating to a detachment. And that's exactly his complaint, is that you didn't follow all the rules relating to a detachment. Not exactly, Your Honor. There is no question. We all agree that there was a detachment. And there are rules for when a service member is detached of when you have to prepare a fitness report, and those rules were implicated here. There is something else. It is a term of art. It's called a detachment for cause, which is an administrative adjudication that requires the detachment of a particular service member. When you speak in terms of detachment for cause, it's my understanding that what we're referring to is detachment, for example, from a current assignment or a tour of duty and not detachment for cause from the military. Is that your understanding? If I understand your question correctly, Your Honor, a detachment for cause is not a discharge from the military. It is a detachment from your current unit to a different assignment. Right. And it seems to me that what Judge Firestone did is she may have erred in looking at her review on detachment for cause based on a discharge from service as opposed to just a detachment from her current tour of duty in Afghanistan. And if that is the case, is that a harmless error? If Judge Firestone committed any error, it was bending over backwards to liberally construe the complaint as alleging any possible claim within the trial court's jurisdiction. But when we're talking about the adverse fitness report, which is the alleged detachment for cause. Right, because it says the reason she was sent home were all these bad things that she did. That's right. But that only has relevance in the context of the allegation that the detachment for cause was a reprisal for whistleblowing, that it led to her non-selection. And Title X establishes administrative remedies for whistleblower and non-selection issues. And so we respectfully submit that the detachment for cause issue is really part and parcel of the whistleblower and the non-selection issues. Let me ask you about the whistleblower because, you know, there might be good reason why it doesn't completely trust the administrative procedures under the Whistleblower Protection Act. As I read it, once the inspector general does a report, that is supposed to actually be sent to delivered to both the secretary of defense and the secretary of the Navy. And they are supposed to affirmatively act on those reports. And instead, the inspector general sent to the Board of Corrections. And the procedures don't seem to have ever been followed by the government. Your Honor, that is not the case. Please allow me to explain. The inspector general conducts the init. That's the first level of administrative remedies for whistleblower issues. Now, the inspector general may determine that a full-blown investigation is warranted, in which case a report of investigation would be generated. Or, as what happened in this case, the inspector general could conduct a threshold review and determine that there is insufficient evidence to warrant an investigation. So, at the first level of review, Lieutenant Commander Santana received a decision from the inspector general that there would be no full-blown investigation. The administrative review process provides, expressly in the statute, that if the service member or former service member is unsatisfied with the results of the IG's look at the matter, then the next step, the second stage of the administrative review process, is to go to the relevant corrections board. And if the service member is unsatisfied as a result of the second step, at the corrections board level, there is a special provision in the law that allows for review by the Secretary of Defense. That's the third tier in the wedding cake of administrative remedies. And here, Lieutenant Commander Santana took the first step, went to the IG, the IG determined there was insufficient cause to warrant an investigation. Lieutenant Commander Santana initiated the second step. She filed at the BCNR, but then affirmatively withdrew her petition voluntarily on her own accord and thus deprived the military of making a determination in accordance with the administrative review process that is set forth in the statute. And we respectfully submit, Your Honors, that the administrative remedies for whistleblowing are exclusive. Can I ask, I see this as a practical matter, can she now go and seek administrative relief on her reprisal claim, or is she timed out? Your Honor, the administrative remedies available to her now include going to the board of corrections. The 1552, right? Under 1034. That's the military whistleblower protection. It refers expressly to, says one way you can do this is go to the corrections board. And is she timed out for doing that or not? The corrections board has a discretionary three-year limitations period, which is frequently waived. So she can at least try. She certainly can. Even though she went there once and withdrew it. That's right, Your Honor. And in fact, from day one in this case, we've encouraged Lieutenant Commander Santana to go through the correct process. Do you have a position about whether you would invoke waiver if she did that? If she went to the corrections board and said, sorry for withdrawing the last one, now I'd like you to consider it. Does the secretary participate as an adverse party in that process? So that you would either be able to say, you should waive it here. I know you often don't, but you should here. Or are you in a position to say, we won't invoke waiver and you, the corrections board, shouldn't invoke waiver. You should address this reprisal claim on the merits, even though it's some years late. I understand the question, but it would be inappropriate for me to say, before the Navy exercises the discretion in the first instance, for us to comment on that question. At this time. You argued that Klingerschmidt was correct in concluding that this is an exclusive remedy for retaliation claims. That, in other words, you can't have, as Judge Reyna put it, a military pay act claim that masquerades as a whistleblower protection claim. You also argue that there is then no judicial review of that determination. Do we even need to address that second question that was decided by Klingerschmidt at this point in time? It's extremely important for the court to address whether the administrative remedies for military whistleblowing are an exclusive remedy. If for no other reason than the subsequent case in the trial court, which is a carbon copy of the first case, raises all the same whistleblowing merits issues that the court had before in this case. Is there ever a situation where the factual basis that would support a whistleblower action also support a military pay act action? Assuming that you divide the relief you're looking for, instead of looking to be placed back into employment, you're actually looking for a loss of pay. It is possible, and we could look at this case that way. Without question, the focus of the underlying allegations of error are alleged whistleblowing in this case. That adverse fitness report, if we set all the alleged whistleblowing aside and it is viewed solely in the context of a claim that my Lieutenant Commander Santana's fitness report was inaccurate, and it led to non-selection for promotion and ultimately discharge. There would be a military pay act claim if the administrative remedies were exhausted under 628 and 1558 to adjudicate the question of whether the special selection board was supported by substantial evidence and not arbitrary and capricious and that the APA standard of review would apply. And that would be within the trial court's jurisdiction. But what we have here is a situation where perhaps due to disdain for the administrative review process, we have a litigant who has completely ignored intentionally the administrative review process that is robust and is provided for by statute. And when the law was passed, the original Military Whistleblower Protection Act bill had a judicial review provision in it, providing for APA style judicial review for the most part. Can I just, I guess this picks up on a point raised by Judge O'Malley before. Since it's clear that in the case we have in front of us, and maybe even in the December 2016 case, there hasn't been administrative exhaustion of the whistleblower remedies. I'm not quite sure whether that's true in the 2016 case, because maybe getting the new letter about not having a special selection board isn't quite enough, maybe you have to go to the correction board. But in any event, doesn't your idea of respect for those administrative remedies tend to support the notion that it's premature for us to conclude that even once those remedies are exhausted, there is no Military Pay Act judicial review? That we should wait until there's a case in which they have been exhausted and then face the reviewability question? I know you want a favorable answer like yesterday, but isn't it... Your Honor, for the new case, I will answer your question, but just the predicate leading up to your question was that, well, now there's been some exhaustion, but that's only with respect to the request for a selection board. There's been no exhaustion, no complete exhaustion relative to the military whistleblower issues. Is that because they went to the wrong place? No, Your Honor, it's because the Lieutenant Commander Santana has not gone to the corrections board. Because she withdrew it. That's right, that's right. And then she didn't request review by the Secretary of the Navy or Secretary of Defense. And no decision is final until you go through that administrative process. And that's the same... I understand where your question is going, and it's possible that the court could save it for another day, but this was squarely decided by the trial court, and we've all briefed the matter, and we respectfully submit that it is right for a decision today and would help provide helpful guidance to the trial court and to service members generally to have a ruling on this very important issue. But the claims court can't entertain APA claims, correct? Only if there's a money mandating component. Okay. And the Whistleblower Act, that's not a money mandating act. That's right, Your Honor. This court has twice held in procuring decisions that the Military Whistleblower Protection Act is not money mandating. Can I ask this? The language of 1558 says if the secretary or his designee refuses a special selection board, a court of the United States can review that. What's the basis for the Court of Federal Claims being such a court? I gather you agree that it is. Yes, because the Military Pay Act claim based on the discharge pursuant to non-selection... So the idea is that even if the initial relief is you were wrong in not having a special selection board, the remedy is go and have a special selection board and then you come back. It's all kind of supplemental or a precursor to an eventual pay claim. That's right. It's all part of a claim that the service member is no longer receiving their military pay. And is the question of exhaustion... There are two separate questions about the relationship between the Military Whistleblower Protection Act and the Military Pay Act. One is does the former actually bar judicial review, but the second is just an exhaustion question. Would we treat the exhaustion question as a matter of jurisdiction, and therefore dismissal for one of jurisdiction or dismissal on the merits, or does that not matter? Traditionally, exhaustion is considered to be a question of jurisdiction because we wouldn't want to say that a party who comes to court and hasn't exhausted their administrative remedies, it's one shot and done. If you haven't exhausted your remedies... Exactly. You don't have a dismissal on the merits that would preclude a return to court once the administrative remedies were exhausted. Okay. You're out of time. Thank you. I spent 22 years in the military in the United States Navy, and when they fire somebody and send them home, that's a detachment for cause. What does fire mean? Go away from here, but you're still getting your same pay? That's correct. But there is a formal thing that's called a detachment for cause, and so you're saying that somehow the fitness report was effectively that? No, the fitness report just reflected the fact that she was transferred early and transferred for a cause, really. And that's what it was. You're saying it essentially had the same effect as a detachment for cause in terms of her ability to get promoted or to be continued. I came in here thinking, and let me just ask again, I'm sorry if we're going over old ground. You have your new suit, your December 2016 suit, in which you're challenging the denial of the Special Selection Board. Why is that not an appropriate action in which you can say there was the ultimate separation, the denial of separation from the service, was a consequence, slightly indirect, but nevertheless a consequence of a procedurally unlawful detachment, and I'm entitled to relief for that? To an extent, Your Honor, that's what we did in both cases, because all of these factors go to the military pay. The cause of action is military pay, but if I put in a complaint that says, Lieutenant Commander Santana was deprived of military pay because she was discharged improperly, and don't provide any underlying facts, you're going to say, why? And that's all we've been doing with all of this information that the government is objecting to, is showing underlying facts, context, reason why she was discharged, and why that was an improper deprivation of pay and allowance. But in this case, as it relates to the continuation of the Special Selection Board, in this particular case, the most we could do would be to remand, to allow you to amend your complaint to assert a claim, now having exhausted your administrative remedies, right? No, Your Honor, because the administrative remedy does not apply. Our position is that it does not apply. On the detachment, it doesn't? It doesn't apply. There was no administrative remedy for the detachment. I'm talking about the argument that you should have been entitled to a Special Selection Board. I see what you're saying. What we should have been entitled to was a review by the Chief of Naval Personnel as to whether or not that detachment was proper, and that's what the military personnel manual says. And we didn't get that. But our cause of action today is really due to the military pay. If I could give you an example, if everything happened the way it did, reprisal, non-selection for promotion, detachment for cause, everything, and she stayed on active duty until she had her time for retirement, we would not have had a cause of action under the Military Pay Act. We would have had to have gone to the Administrative Procedures Act. The only thing that gives us the cause of action is the fact that she was discharged early. That's the cause of action. Everything underlying is incidental to and collateral to. This Court has always held, and so has the Court of Federal Claims, that you can bring up things like fitness reports and so on and so forth as incidental and collateral. As far as administrative remedies go in Judge Toronto, I see that's the way you're going there. We don't want to go to the Board for Correction Naval Records. Why? Because we have no confidence in it. It's why you're seeing more and more military pay cases. Congress may be changing that. There's been a couple of bills coming up that we've supported to try to change it, and we're hopeful that it's going to be changed someday. The problem is the Board itself has just become a whitewash for the Department, in my opinion. I've done a lot of these cases, and I've seen the BCNR especially. But until Congress changes the procedures, you can't just say, I don't trust them, so I'm not going to go through them. In a military pay case though, under Martinez, Your Honor, going to the Correction Board is not required. That's why we bring cases under the Military Pay Act. If it was the Administrative Procedures Act case in the District Court, sure, we'd have to go to the Board. Like I said, that's why you're starting to see more and more of these military pay cases, is because people have lost confidence in the Board. Martinez wasn't a whistleblower case, right? Martinez was not. It seems to me there are two distinct exhaustion issues, one having to do with the whistleblower statute, in which one could say at a minimum you have to exhaust the 1034 designated processes, which in this case probably means going back to the Corrections Board. And the other is the procedural error, the alleged procedural error, in what you say was in fact a detachment for cause, which probably has been exhausted, because that didn't cause a pay problem until the separation. And the separation, I know you disagree, is perhaps subject to a 1558 exhaustion. And, Your Honor, if this was a straight-out whistleblower case, I would agree with you 100%. But it's not. The whistleblower is a factual context and an incidental and collateral to it. It's just, like I said, I can't write a complaint that says Commander Santana was discharged improperly without having any underlying facts or showing what led to that improper discharge. And that's where it was. And the government's real good about getting in there and kind of confusing the issue there and making it look like we're coming after on whistleblower and fitness reports and so on and so forth. All of those are incidental and collateral, too. The problem, the case was military pay, improper discharge, improper discharge, cost her military pay and allowances under the Military Pay Act. And I've been sitting here watching this, and I all of a sudden didn't realize it's not going down, it's going up. I apologize for that. Your Honor, do you have any more questions? No.